# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| In re: RESOURCE TECHNOLOGY CORP., <br><br> Debtor. <br><br><br> LEON GREENBLATT, CHIPLEASE, INC., and BANCO PANAMERICA, INC., <br><br> Appellants, <br><br> v. <br><br> GREGG E. SZILAGYI, Chapter 11 Trustee for RESOURCE TECHNOLOGY CORP., <br><br> Appellee. | Case No. 04 C 7389 |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

A bankruptcy judge approved a settlement agreement between Chapter 11 debtor Resource Technology Group and Beecher Development Co., authorizing RTC's bankruptcy trustee to terminate a contract with Beecher. Several secured creditors opposed the settlement and submitted a counterproposal that the bankruptcy judge concluded was not a viable alternative. The creditors now appeal the bankruptcy court's approval of the settlement agreement. For the reasons stated below, the Court dismisses the appeal as moot.

1

## Facts

RTC is in the business of extracting methane gas from landfills and disposing of it or converting it into usable energy, which RTC then sells. On April 24, 1995, RTC entered into a contract with Beecher giving RTC the exclusive right to develop and install a landfill gas collection and control system and to sell landfill gas from the Beecher Landfill, located near Beecher, Illinois.

RTC filed a Chapter 11 petition on February 1, 2000. The company continued its operations at the Beecher landfill and elsewhere during the bankruptcy proceedings. On November 30, 2000, Beecher moved the bankruptcy court for entry of an order requiring RTC to assume or reject the Beecher contract. Beecher alleged numerous defaults by RTC involving ongoing violations of regulatory requirements applicable to landfill collection systems, as well as post-petition environmental violations. The Illinois Environmental Protection Agency has also issued two notices of violations to RTC.[1] According to Beecher, the operational and environmental compliance problems at Beecher Landfill were a result of RTC's poor design and lack of maintenance of the gas collection facility.

If RTC assumed the Beecher agreement, it would have been required by the Bankruptcy Code to cure all of its defaults or provide adequate assurance that the trustee would do so, pay actual damages to Beecher, and provide adequate assurance that RTC could perform its obligations going forward. *See* 11 U.S.C. § 365(b)(1). Due to the serious environmental

---

[1] On March 28, 2002, the Illinois EPA issued a notice of violation to RTC for failure to comply with permit requirements for gas collection and control systems, failure to submit an initial design capacity and emissions report, and failure to conduct an initial performance test for the gas collection and control system. On August 9, 2004, the EPA issued a second notice of violation to RTC for fourteen violations, including positive pressure at the well heads.

concerns and extensive allegations of default by RTC, Gregg Szilagyi, who was appointed trustee of RTC's estate on August 26, 2003, met with representatives of RTC and Beecher throughout 2003 and 2004 to discuss solutions for bringing the gas collection system at the landfill into compliance. After consulting independent experts to assess the causes of and solutions for the system's problems, the trustee estimated that the requisite improvements would cost $500,000. He also estimated that the assumption litigation would cost the estate between $75,000 and $150,000. At the time, the estate was operating at a break-even basis and had no cash available to implement the necessary changes. Moreover, the turbine at Beecher Landfill had been removed from service on March 23, 2004 due to mechanical problems, and consequently, the estate had received no revenue from Beecher Landfill since that time.

Due to the high costs of remedying the problems with the gas collection system and the uncertain and expensive potential litigation with Beecher over RTC's ability to assume the Beecher Agreement, the trustee concluded that settlement was in the best interest of the estate. After engaging in settlement negotiations with Beecher, the trustee moved the bankruptcy court on August 11, 2004 to approve a settlement agreement the parties had reached. Under the terms of the proposed settlement agreement, the trustee and Beecher would terminate the Beecher Agreement, the trustee would abandon any rights the estate might have in the real and personal property at the Beecher Landfill, Beecher would pay the estate $250,000, and the parties would give each other mutual releases of all obligations and claims under the agreement.

A group of lenders consisting of Banco Panamericano, Inc., Chiplease, Inc., and Leon Greenblatt (collectively, the "Banco group") objected to the trustee's motion because it was their belief that if the problems at the Beecher Landfill were rectified, the operations would be worth

millions of dollars more than what Beecher was offering. The day before the hearing was to begin on the trustee's motion, the Banco group submitted a counterproposal to the trustee. Under the terms of this alternative proposal, the Banco group would contribute $300,000 in new cash to the RTC estate, forgive $700,000 of RTC's existing debt, fund the costs of the assumption litigation, and indemnify the RTC estate against any liability to Beecher that might be established in the assumption litigation. In exchange, the trustee would be obligated to withdraw his motion to approve the settlement agreement with Beecher and use his best efforts to seek assumption of the Beecher Agreement.

Following a two-day trial, Chief Bankruptcy Judge Eugene Wedoff entered an order granting the trustee's motion to approve the settlement agreement with Beecher. The Banco group petitioned the bankruptcy court for a stay pending appeal, but the court denied the motion. Appellants did not seek a stay from the district court.

The Banco group has appealed, arguing that the bankruptcy court erred in approving to dispose of the Beecher Agreement via settlement with Beecher even though the Banco group had made a higher and better offer for the asset. Filing separate responses, the trustee and Beecher[2] both assert that the Banco group's appeal is moot, but that if the appeal is not found to be moot, the Court should nonetheless find that the bankruptcy court did not abuse its discretion by approving the settlement.

---

[2] Though Beecher is not formally a party to this appeal, the trustee and the Banco group agreed to include Beecher in the service list for all filings because of its undisputed interest in the outcome. On its own initiative, Beecher filed a separate response to the Banco group's opening brief. Because the Banco group has not objected to Beecher's response being submitted to the Court and, in fact, directly responds to several of Beecher's arguments in their reply brief, the Court will consider Beecher's arguments on appeal.

4

## Standard of Review

This Court reviews the bankruptcy court's approval of a settlement agreement for abuse of discretion. *Depoister v. Mary M. Holloway Foundation*, 36 F.3d 582, 586-87 (7th Cir. 1994). The relevant inquiry is whether any reasonable person could agree with the bankruptcy court's decision. *In re Winer*, 162 B.R. 781, 783 (N.D. Ill. 1993). Thus, we will reverse the bankruptcy court's determination only if the judge based his decision upon an erroneous conclusion of law or if the record contains no evidence upon which the decision rationally could have been based. *Id.* Implicit within this standard is that the judge must have actually exercised his discretion. He may not simply "rubber-stamp" the trustee's proposal, but must instead apprise himself of the facts necessary to make an informed and independent judgment about the settlement. *In re American Reserve Corp. v. LaSalle National Bank*, 841 F.2d 159, 162 (7th Cir. 1987).

## Discussion

### 1. Mootness

Section 363(m) of the Bankruptcy Code provides that reversal on appeal of a court authorization under § 363(b) or (c) of a sale of property of the estate does not affect the sale's validity unless the court's authorization was stayed pending appeal. 11 U.S.C. § 363(m). Under § 363(m), an appeal of a bankruptcy court's sale authorization is moot if the party seeking appeal fails to obtain a stay. *In re Vlasek*, 325 F.3d 955, 961 (7th Cir. 2003). The trustee and Beecher contend that the Banco group's appeal is moot because the lenders failed to obtain a stay pending appeal. They argue that the settlement of a claim held by the estate is the equivalent of a sale of the claim.

In their opening brief, the Banco group conceded that the bankruptcy court's ruling

5

"effected a disposition of an asset of the RTC estate, an issue which is governed by 11 U.S.C. § 363." Banco Brief at 5. Judge Wedoff explained in his oral ruling that because the trustee was seeking to liquidate an asset of the estate, the Beecher Agreement, the notice and hearing requirements of § 363(b) applied. *See* 10/4/02 Tr. 9-10. The bankruptcy court also applied the "best interests of the estate" standard to the Beecher settlement agreement, which is the test governing proposed sales of assets.

The First Circuit has held that § 363(m) does not apply to an order approving the settlement of a claim belonging to the estate, largely because a settlement is not a "sale" within the meaning of the statute. *Hicks, Muse & Co. v. Brandt (In re Healthco Int'l Inc.)*, 136 F.3d 45, 49 (1st Cir. 1998). The court in that case also noted that applying § 363(m) to approvals of settlements does not further the policy underlying the statute, which is to encourage optimum bids for property of the estate by ensuring prompt finality. *Id.* But as the court in *In re Telesphere Communication, Inc.*, 179 B.R. 554, 552 n.7 (N.D. Ill. 1994), aptly noted, "the settlement of a cause of action held by the estate is plainly the equivalent of a sale of that claim." Moreover, in this case, unlike in *Hicks, Muse*, there was, in effect, a "bidding" process, thus bringing into play § 363(m)'s policy of encouraging better offers by ensuring finality. For these reasons, the appeal is rendered moot by the Banco group's failure to obtain a stay.

Even if, however, § 363(m) did not apply, the appeal is rendered moot due to pragmatic considerations. The "pragmatic" mootness test requires "proof that the challenged bankruptcy court order has been implemented to the degree that meaningful appellate relief is no longer practicable." *Hicks, Muse*, 136 F.3d at 48. Beecher represents, and the Banco group does not dispute, that pursuant to the approval of the settlement, Beecher has already taken over

6

ownership and operational control of the gas collection system, undertaken the responsibility of physically adjusting the gas collection system, and replaced the header system for landfill unit 2. In addition, the trustee has terminated RTC's environmental permit at the Beecher Landfill. Under the circumstances, it would be impossible to unscramble the egg to the extent necessary to implement an order requiring acceptance of the Banco group's counterproposal.

## 2. Merits

Even if the appeal were not moot, the Court would affirm on the merits. A bankruptcy judge may approve a settlement in a liquidation proceeding over a party's objection if the settlement is in the best interests of the estate. *See In re American Reserve Corp. v. Holland*, 841 F.2d 159, 161 (7th Cir. 1987); *In re Telesphere Communications, Inc.*, 179 B.R. at 552. Courts have developed a two-step methodology for determining whether a proposed settlement is in the estate's best interest. The first step involves comparing the settlement's terms with the litigation's probable costs and benefits, which requires the court to estimate both the value of the proposed settlement and the likely outcome of litigating the claims. *See Telesphere*, 179 B.R. at 553. The second step entails assessing whether the terms of the proposed settlement fall within a reasonable range of potential litigation outcomes. *See id.*

Applying these standards, Judge Wedoff concluded that when considered without regard to the Banco group's proposal, the settlement agreement should be approved. 10/4/02 Tr. at 11. He opined that if the trustee were to litigate over the Beecher Agreement, there was a very significant potential for a negative outcome for the estate. *See id.* at 11-12. He cited the high costs of litigating, which he estimated could easily reach the $75,000 mark, and noted that "given the evidence that was presented at [the] hearing, it is certainly a possible litigation outcome that

7

the court would determine that the agreement is not capable of being assumed." *Id* at 11. Additionally, he considered the possibility that the estate might be liable to Beecher for large sums both on a pre-petition basis for any defaults that had occurred and on an administrative cost basis for any damages that resulted during the administration of the estate. Judge Wedoff determined that the settlement agreement, which would eliminate all liability for the estate as well as potential litigation costs, while still providing the estate with a $250,000 benefit, was reasonable.

The bankruptcy court likewise carefully considered the Banco group's contention that its counterproposal provided a basis for rejecting the proposed settlement, but ultimately concluded that this was not a viable option for the trustee. Though Judge Wedoff noted that the counterproposal involved a larger dollar amount and a broader indemnification than that offered in the proposed settlement with Beecher, he determined that the provision requiring the trustee to pursue in good faith the assumption of the Beecher Agreement would conflict with the trustee's fiduciary duty to pursue assumption of a contract only if the trustee believes that that course of action is in the estate's best interest. Judge Wedoff likewise expressed concern that the Banco group's proposal might put the estate at risk of further costly litigation because a dispute between the trustee and the Banco group could ensue over whether the trustee was pursuing assumption in good faith. Finally, Judge Wedoff noted that there was a question concerning whether the trustee would be able to collect indemnification from the Banco group, though he did not elaborate this point. In sum, the bankruptcy court concluded that the trustee could not reasonably accept the counterproposal, which left only the proposed settlement agreement to consider.

The crux of the Banco group's position on appeal is that its counterproposal was superior

to the settlement proposal and that Judge Wedoff's concerns over the trustee's fiduciary duty and the enforcement of the Banco group's indemnification obligation were groundless. The lenders do not appear to contest the soundness of the Beecher settlement, but instead assert that Judge Wedoff erred in approving the settlement when a better alternative existed. The Banco group argues that Judge Wedoff did not explain how the trustee's obligation to use good faith efforts to pursue assumption could conflict with his fiduciary duties and posits that even if such a situation did arise, the trustee could simply abandon the asset, leaving the Banco group to work out its rights under non-bankruptcy law. The Banco group also maintains that contrary to Judge Wedoff's concerns, the Banco group's indemnification obligation would be directly enforceable, since the debt owed by RTC to the lenders far exceeded any amount of indemnification liability that the Banco group might incur through their counterproposal.

Though the Banco group may be correct that its proposal has the potential to exceed the value of the Beecher Agreement, the Court cannot say that Judge Wedoff's more risk-averse stance was based on an erroneous conclusion of law or that there was no evidence upon which the decision rationally could have been based. *See Winer*, 162 B.R. at 783. Judge Wedoff reasonably took into account the potential for a conflict between the trustee's fiduciary duties to the estate and his obligations under the Banco group's counterproposal. In addition, the Banco group does not address Judge Wedoff's valid concern that the counterproposal could lead to costly litigation for the estate and the potential loss of the right to indemnification if the Banco group and the trustee were to disagree over whether the trustee was using his best efforts to seek assumption.

In sum, it is evident from the record that Judge Wedoff carefully considered the Banco

group's counterproposal and determined that the risks involved outweighed the possibility that the estate would obtain a higher return than under the proposed settlement with Beecher. His conclusion regarding the best interests of the estate was an informed and independent judgment reflecting a thoughtful review of the relevant factors and thus was not an abuse of his discretion.

## Conclusion

For the reasons stated above, the Clerk is directed to enter judgment dismissing the appeal as moot.

MATTHEW F. KENNELLY
United States District Judge

Date: May 16, 2005